# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| **DENITHIA PENDERGRASS AND ALENA KELLEY, Individually and On Behalf of All Others Similarly Situated,** ) ) ) ) | |
| *Plaintiffs*, ) | **CASE NO. 3:12-cv-01287** |
| **v.** ) ) | **AMENDED CLASS AND** |
| **CITY GEAR, LLC, a.k.a. SHELMAR RETAIL PARTNERS, LLC; SHELMAR RETAIL PARTNERS, INC.; SHELMAR, INC.; MARTY'S LLC; AND MARTY'S INC.;** ) ) ) ) | **COLLECTIVE ACTION COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| *Defendants*. ) ) ) ) | **JUDGE CAMPBELL MAG. JUDGE KNOWLES** |

## AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT

Plaintiffs Denithia Pendergrass and Alena Kelley ("Plaintiffs" or "Collective Action Representatives") are current or former Store Managers and/or Assistant Managers of Defendants ("Defendants," "City Gear," "City Gear/Shelmar," or the "Company"). Plaintiffs, individually and on behalf of all other similarly situated employees, complain by their attorneys Sanford Heisler, LLP and Barrett Johnston, LLC, as follows:

### I.  INTRODUCTION – NATURE OF THE ACTION

1.  This case arises out of Defendants' systemic, Company-wide unlawful treatment of Plaintiffs and hundreds of similarly-situated employees whom Defendants wrongfully classify as exempt from overtime compensation under the federal Fair Labor Standards Act ("FLSA").

2.     During the relevant period, City Gear owned and operated approximately 100 retail clothing stores throughout the Southern, Southeastern, and Midwestern U.S. – under brand names such as Marty's, City Gear, CGP, and The Vault.  Plaintiffs and the members of the proposed collective action class are current and former Store Managers and Assistant Managers who have worked in Defendants' stores.  City Gear has deliberately violated federal wage and hour protections in order to extract long hours from these employees, without paying time-and-a-half overtime pay as required by law.

3.     While City Gear has classified its Store Managers and Assistant Managers as exempt from overtime compensation, it has not paid them as the law requires employers to pay exempt employees.  The FLSA's white collar exemptions require that employees be paid on a **fixed** salary basis.  Although City Gear purported to pay Plaintiffs and the class members a fixed weekly salary during the class period, it in fact did not.  City Gear uniformly subjected its Store Managers and Assistant Managers to *pro rata* pay deductions if they worked less than the Company's mandatory minimum work week.  These deductions were taken even for absences of less than one day or when there was no available work.  If Plaintiffs and the class members did not work 43 hours in a week for any reason, they were converted into hourly employees; their weekly wage was divided by 45 and then they were paid for the hours they actually worked.  Store Managers and Assistant Managers who worked less than 43 hours in any given week were paid on an hourly basis.  This uniform policy and practice of making improper deductions conclusively demonstrates the Company's intention not to actually pay Plaintiffs and the class members on a fixed salaried basis.[1]

---

[1] During the applicable time period to this action, City Gear required the class members

4.      At the same time, Store Managers and Assistant Managers who worked more than 40 hours per week (or the Company's mandatory 45-hour work week) were not paid any additional compensation for working overtime.  In this manner, Defendants sought to have it both ways: paying the class on an hourly basis, under which they will not receive their full "salaries" if they worked less than 43 hours per week, but refusing to pay them overtime for working more than 40 hours per week.  The upshot of City Gear's policies was that Plaintiffs and the class members were not paid a fixed salary, but, at the same time, an artificial hard cap is set on their pay – no matter how many hours they were required to work.

5.      During the applicable time period to this action, City Gear wrongfully and willfully misclassified its Store Managers and Assistant Managers as exempt from overtime under the FLSA and therefore refused to compensate them for hours worked in excess of 40 in any given week, much less provide the required time-and-a-half overtime pay.

6.      During most of the year, Plaintiffs and the class members worked a mandatory minimum of 45 hours per week.  During holiday periods, from approximately October or November to January, the mandatory minimum was increased to 50 hours per week and the class members typically worked in excess of that amount.  Plaintiffs and the class members often worked up to 60 hours per week or more.  Plaintiffs' and the class members' actual working hours were recorded by the Company in time and payroll records; however, they did not receive any additional pay for working overtime.

7.      Plaintiffs bring this action on behalf of themselves and other similarly

to work a mandatory minimum of 45 hours per week, but only took prorated pay deductions if they worked less than 43 hours.

3

situated Store Managers and Assistant Managers who elect to opt into this action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, specifically the collective action provision of the FLSA, 29 U.S.C. § 216(b). This action claims that Defendants have violated the wage-and-hour provisions of the FLSA by depriving Plaintiffs, as well as others similarly situated to Plaintiffs, of their lawful overtime wages.

8.     Since at least 2009 through December 11, 2012, Defendants willfully committed widespread violations of the FLSA by forcing similarly-situated Store Managers and Assistant Managers to work more than 40 hours per week without overtime compensation. Due to Defendants' uniform policy and practice of taking improper deductions from Plaintiffs' and the class members' salaries, the members of the collective action class were *not exempt* from the wage and hour laws. The class is defined as follows:

> All Store Managers and Assistant Managers employed by City Gear, Shelmar, and/or their retail stores from December 11, 2009 through December 11, 2012 – who worked at stores including, but not limited to, City Gear, Marty's, CGP, and The Vault but not including Deveroes.

9.     City Gear is liable for failing to pay these employees for all hours worked in excess of 40 hours per week at a rate of one-and-one-half times their regular rate of pay.

10.     Plaintiffs and all similarly situated employees who elect to participate in this action seek unpaid compensation, an equal amount of liquidated damages and/or prejudgment interest, attorneys' fees, and costs pursuant to 29 U.S.C. § 216(b).

11.     Defendants have also violated Tennessee state law by failing to establish hourly rates for Store Managers and Assistant Managers and for failing to communicate those rates to the Store Managers and Assistant Managers before those employees began

4

their employment with Defendants.  Tenn. Code Ann. § 50-2-101.

12.     Finally, Defendants' conduct has resulted in their unjust enrichment to the detriment of Plaintiffs and the class members.

## II.  JURISDICTION AND VENUE

13.     This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331, because the action arises under a federal statute, 29 U.S.C. § 216(b). This Court also has supplemental jurisdiction over Plaintiffs' state law Wage Regulations claims and unjust enrichment claims pursuant to 28 U.S.C. § 1357 because the state law claims are so related to the FLSA claims that they form part of the same case or controversy.

14.     Defendants are subject to personal jurisdiction because they are headquartered and conduct business in Tennessee.  This case arises from Defendants' wrongful conduct in Tennessee, where City Gear maintains its corporate headquarters and employs a substantial portion of the proposed class.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) and (2). A substantial part of the events and the omissions giving rise to the class members' claims occurred in this district.  Additionally, Defendants are deemed to reside in this district under 1391(c) because they are subject to personal jurisdiction in the district.

15.     This Court is empowered to issue a declaratory judgment and further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

## III.  PARTIES

A.      **The Representative Plaintiffs**

16.     **Plaintiff Denithia Pendergrass** ("Ms. Pendergrass") resides in Nashville,

Tennessee, in this judicial District. From approximately July 2006 to the present, Ms. Pendergrass has worked for City Gear/Shelmar at Marty's and City Gear stores in Nashville. She has been an Assistant Manager and Store Manager from approximately August 2006 to the present.

17.     **Plaintiff Alena Kelley** ("Ms. Kelley") resides in Lewisville, Texas. From approximately November 2010 through March 2012, Ms. Kelley worked for City Gear/Shelmar as an Assistant Manager and Store Manager at The Vault in Memphis, Tennessee.

### B.     <u>The Defendants</u>

18.     Defendant City Gear, LLC is a corporation with its headquarters and principal place of business in Memphis, Tennessee. Until June 2012, it was known as Shelmar Retail Partners, LLC. City Gear owns and operates a rapidly-expanding chain of retail clothing stores throughout a swath of Midwestern and Southern states from Ohio to Texas under brand names such as City Gear, Marty's, CGP, and The Vault. Following recent acquisitions, it currently has about 100 stores in 12 states. Since approximately October 2006, the Company has been headed by its President and CEO, Michael E. Longo.

19.     The Company had revenue of $64.5 million in 2011 alone, and employed approximately 500 workers nationwide.

20.     Upon information and belief Defendants Shelmar Retail Partners, Inc., Shelmar, Inc., Marty's LLC, and Marty's, Inc., are subsidiaries and/or affiliates of Defendant City Gear, LLC a.k.a. Shelmar Retail Partners, LLC or were so during the applicable class period. During all or part of the class period, Store Managers and

6

Assistant Managers at retail stores owned or operated by these entities were subject to common employment and compensation policies promulgated by City Gear/Shelmar.

21.     Upon taking over the Company in 2006, Mr. Longo instituted a mandatory 45-hour minimum work week for all Store Managers and Assistant Managers in Defendants' retail stores (increased to 50 hours during the holiday season) and further implemented a uniform policy of making *pro rata* wage deductions when such employees failed to meet the 45-hour minimum in any given week.

22.     Defendants maintain a condensed, centralized command structure presided over by CEO Longo.  Plaintiffs and the class members – the Company's store-level supervisors – report to approximately ten or fewer District Managers, who in turn report to Vice President of Stores Ben Knighten and CEO Longo.  All relevant employment policies and practices are centralized and set at the highest level of the Company.

23.     Defendants engage in interstate commerce or engage in the delivery of goods and services for commerce.  The overtime wage provisions set forth in § 207 of the FLSA apply to Defendants.  Plaintiffs' and the class members' jobs are not subject to any exception or exemption set forth in 29 U.S.C. § 213(a)(1).

## IV. FACTUAL ALLEGATIONS

### A.     Plaintiff Denithia Pendergrass

24.     In or about July 2006, Denithia Pendergrass was hired as a Sales Associate at a Marty's store located on Gallatin Pike in Nashville, Tennessee. As a Sales Associate, Ms. Pendergrass was paid hourly and was considered eligible for overtime.

25.     In August 2006, Ms. Pendergrass was promoted to Assistant Manager and began working at a Marty's store located at 3950 Clarksville Highway in Nashville.  She

7

was now classified as exempt from overtime. Ms. Pendergrass remained in this position until April 2009.

26.     In 2009, Ms. Pendergrass was promoted again, this time to Store Manager at the Marty's on Gallatin Pike where she worked previously. The store later became a City Gear brand store. As a Store Manager, Ms. Pendergrass was still considered ineligible for overtime. Ms. Pendergrass continues to hold this position at present.

27.     As both Assistant Manager and Store Manager during the class period, Ms. Pendergrass was required to work a minimum of 45 hours per week as a matter of Company policy.  During the class period, if she did not work at least 43 hours, the Company took *pro rata* deductions from her weekly pay – dividing her total weekly pay by 45 and paying her on an hourly basis for the hours she actually worked.

28.     For example, in November 2012, Ms. Pendergrass earned a "regular" weekly wage of $785.25.  Divided by 45, this works out to $17.45.  Ms. Pendergrass' earnings statement for the period ending November 18, 2012 shows that she worked 39.17 hours that week and earned gross wages of $683.52 instead of her "regular" rate of $785.25.  On a prorated basis:  39.17 hours x $17.45 = $683.52.

29.     Ms. Pendergrass learned that her pay would be docked for the pay period ending November 18, 2012 when she received a phone call from Laura Presley, an employee in the Company's Payroll department. Ms. Presley informed Ms. Pendergrass that she was short on her hours for the week and that, as a matter of standard Company policy, her pay would be subject to a pro-rated deduction unless she could prove that there had been some mistake or opted to put some of her allotted vacation or sick time towards the missing hours. Ms. Pendergrass chose not to use vacation or sick time to

8

make up the shortfall of 5.83 hours, and therefore her pay was docked.

30.     Ms. Pendergrass typically worked a minimum of 45 hours per week, and usually worked about 11 hours a day.  During the holiday season, the Company increased the mandatory work week to a minimum of 50 hours, and Ms. Pendergrass sometimes put in as many as 65 hours in a single week. Ms. Pendergrass worked through her lunch breaks approximately three times a week in order to get her work done, and also worked from home about one day each week. She scheduled shifts for employees in her store, which had to conform to the Company's mandatory minimum work weeks; the schedules were checked and approved by her District Manager, Carol Jacobs.  Ms. Pendergrass, like all Store Managers and Assistant Managers, was required to clock in on a computer and the Company has time and payroll records showing most of the actual hours she works.

31.     Ms. Pendergrass was not paid any compensation for working more than 40 hours in a week.  As a Store Manager during the class period, she received her "regular" weekly pay of $785.25 as long as she worked 43 hours or more.  She did not receive any additional pay for working more than 45 hours in a week.  For example, Ms. Pendergrass' earnings statement for the pay period ending November 11, 2012 shows that she worked 59.62 hours but still made $785.25.

32.     Ms. Pendergrass has personal knowledge that it was uniform Company-wide policy to treat Store Managers and Assistant Managers as exempt from overtime and not to pay them for the hours they work in excess of 40 per week; to require them to work a 45-hour work week, which is increased to 50 hours during the holiday season; and to dock their pay on a prorated basis if they work fewer than 45 hours. These policies were conveyed to Store Managers and Assistant Managers when they are hired and were

constantly being reinforced by Company leadership. For example, the Company's District Managers routinely sent emails to the Store Managers and Assistant Managers to remind them that their pay would be prorated whenever they worked less than 45 hours.

33.     In Ms. Pendergrass' understanding, other Store Managers and Assistant Managers, including the Assistant Manager in her store, worked similar hours to her during the class period. Store Managers and Assistant Managers almost always worked at least 45 hours a week because they are scheduled to do so and every time they did not their wages were docked accordingly. Store Managers and Assistant Managers almost always worked at least 50 hours per week during the holiday season.

**B.     Plaintiff Alena Kelley**

34.     In or about November 2010, Plaintiff Kelley began working for City Gear, LLC as an Assistant Manager at The Vault in Memphis, Tennessee. She became Store Manager at The Vault in or about January 2011, a position which she held until March 2012. In these positions, Ms. Kelley was classified as "exempt" by the Company and was not compensated for working more than 40 hours in a work week. The primary difference between the positions was that Ms. Kelley received a small raise upon being promoted to Store Manager.

35.     As both Assistant Manager and Store Manager, Ms. Kelley was required to work a minimum of 45 hours per week as a matter of Company policy. If she did not work at least 43 hours, the Company took *pro rata* deductions from her weekly pay – dividing by 45 and paying her on an hourly basis for the hours she actually worked.

36.     For example, in 2011 and 2012, Ms. Kelley earned a "regular" weekly wage of $655.65. Divided by 45, this works out to approximately $14.57. Ms. Kelly's

10

earnings statement for the period ending May 29, 2011 shows that she worked 34.63 hours that week and earned gross wages of $504.56 instead of her "regular" rate of $655.65. On a prorated basis: 34.63 hours x $14.57 = $504.56. Similarly, Ms. Kelley's earnings statement for the period ending February 12, 2012 shows that she worked 39.26 hours and earned gross wages of $572.02 (39.26 x $14.57 = $572.02).

37. Ms. Kelley typically worked a minimum of 45 hours per week. During holiday season, the Company increased the mandatory work week to a minimum of 50 hours, and Ms. Kelley typically worked 50 hours each week. Ms. Kelley also was often required to work through her lunch breaks. Her work shifts were set by her District Manager, Donald Chavis. Ms. Kelley, like all Store Managers and Assistant Managers, was required to clock in on a computer and the Company has time and payroll records showing most of the actual hours she worked.

38. Ms. Kelley was not paid any compensation for working more than 40 hours in a week. As a Store Manager, she received her "regular" weekly pay of $655.65 as long as she worked 43 hours or more. She did not receive any additional pay for working more than 45 hours in a week. For example, Ms. Kelley's earnings statement for the pay period ending December 11, 2011 shows that she worked 48.52 hours but still made $655.65; her statement for the period ending December 25, 2011 shows that she worked 52.67 hours and still made the same amount.

39. Ms. Kelley complained to District Manager Donald Chavis and Vice President of Stores Ben Knighten that her store was understaffed, requiring her and other employees to work excessive hours and undermining their work-life balance. In response, the Company cut the store's staff even more. This necessitated additional

unpaid work hours for Ms. Kelley.

40.     Ms. Kelley has personal knowledge that the practices she was subjected to were a matter of uniform Company policy and applied to all Store Managers and Assistant Managers in each of City Gear/Shelmar's stores.  Store Managers participated in a conference call each Monday with their District Managers and the other Store Managers  under that District Manager (Assistant Managers also sometimes participated); a single District Manager might oversee stores in different states and cities.  Payroll and scheduling were topics of discussion during these weekly calls. Store Managers also participated in Company-wide National Sales Meetings each year.   From these conference calls and meetings, as well as from verbal and written statements made by her superiors, Ms. Kelley is aware that: (i) City Gear/Shelmar operated as a single unified entity with common employment practices and policies; (ii) all Store Managers and Assistant Managers at all Company-owned stores were required to work a 45-hour minimum work week, and were subjected to *pro rata* salary deductions if they did not work at least 43 hours; (iii) all Store Managers and Assistant Managers at all Company stores were required to work a mandatory 50-hour minimum work week during holiday season; (iv) Store Managers and Assistant Managers typically worked from 45 to 60 hours per week; and (v) Store Managers and Assistant Managers were treated as exempt and were not compensated for working more than 40 hours in a work week.

41.     Ms. Kelley was told on numerous occasions and by multiple City Gear/Shelmar employees, including upper-level management, that *pro rata* wage deductions for working less than its mandatory minimum workweek are a standard practice of the Company.   This message was repeatedly reinforced by Ms. Kelley's

Case 3:12-cv-01287   Document 113-3   Filed 10/14/13   Page 12 of 24 PageID #: 860

District Manager Mr. Chavis.  For example, all Store Managers and Assistant Managers reporting to Mr. Chavis received emails when any one of them worked less than the minimum and had his or her salary docked.   District Manager Chavis was in charge of overseeing stores in multiple Company Districts, including stores located in Alabama, Arkansas, Mississippi, Missouri, and Tennessee.

42.     Ms. Kelley also has had regular contact with other Store Managers and has spoken to many of her peers regarding City Gear/Shelmar's labor practices.   In Ms. Kelley's understanding, the members of the class felt overworked and underpaid due to the Company's wage and hour policies.  They were all working similar hours for no additional compensation.  They were all subject to wage deductions if they worked fewer than the Company's mandatory minimum hours.

## V.  COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

43.     Pursuant to Company-wide policy, since at least 2009 through December 11, 2012, Plaintiffs and the FLSA class members were all classified as exempt employees pursuant to one or more of the FLSA's white collar exemptions.  Plaintiffs and the class members all worked more than 40 hours per week without receiving overtime compensation.

44.     The white collar exemptions of the FLSA contain a salary component and a duties component.  Regardless of what duties an employee performs, if the employee is not paid on a fixed salary basis, he or she is not exempt and must be paid overtime.

45.     The FLSA mandates a standard 40-hour work week for non-exempt employees.  Such employees must be paid time-and-a-half overtime compensation for all hours worked above 40 hours in a particular week.

13

46.     Defendants instituted a 45-hour minimum work week for all Store Managers and Assistant Managers – Plaintiffs and the class members.  Defendants implemented a uniform policy of taking *pro rata* wage deductions if class members worked less than 45 hours in a particular week.  In practice, Defendants recognized a two-hour grace period, and would take the deductions whenever an employee worked less than 43 hours in a week for any reason – including for absences of less than one day or those occasioned by a lack of work.

47.     This uniform practice of taking impermissible deductions conclusively demonstrates Defendants' intent to pay Plaintiffs and the class members hourly, not on a true salary basis.  These deductions defeat the salary-basis component of the exemptions and convert Plaintiffs and the class members into hourly, non-exempt workers.

48.     An employer is not entitled to pay its employees hourly up to a certain number of hours and then not pay them at all once that limit is reached.   The FLSA is specifically designed to protect workers from such unscrupulous labor practices.  Defendants are required to pay Plaintiffs and the class members' time-and-a-half overtime compensation for all hours they worked above 40 hours in any given week.

49.     Plaintiffs and the class members typically worked from 45 to 60 hours per week or more, and are entitled to be compensated for their lengthy work hours.  The bulk of the actual hours worked by each member of the class can be easily discerned from Defendants' time and payroll records.  In Plaintiffs' understanding, the relevant records are computerized and maintained by Human Resources in Defendants' home office.

50.     Since at least 2009 through December 11, 2012, Defendants misclassified non-exempt Store Managers and Assistant Managers as salaried exempt employees and

refused to pay them compensation for hours worked above 40 hours in a particular week. Class members and other employees who complained about the Company's wage and hour practices were ignored or threatened with the loss of their jobs.

51.     Plaintiffs and the class members do not receive commissions but did receive substantial periodic bonuses. These bonuses are set by objective criteria and are part of the compensation package expected by Plaintiffs and the class members. They therefore qualify as non-discretionary bonuses under the FLSA and should be included in the class members' regular rates of pay for the purpose of calculating the unpaid overtime wages to which they are entitled. *See* 29 U.S.C. § 207(e); 29 C.F.R. §§ 778.208, 778.211.

52.     Plaintiffs bring their overtime claim on behalf of the following category of similarly-situated individuals who worked for Defendants at any time from three years prior to the filing of this Complaint to entry of judgment in this case:

> All Store Managers and Assistant Managers employed by City Gear, Shelmar, and/or their retail stores from December 11, 2009 through December 11, 2012 judgment – who worked at stores including, but not limited to, City Gear, Marty's, CGP, and The Vault but not including Deveroes.

53.     Defendants are liable under the FLSA for failing to properly compensate Plaintiffs and the class, and as such, notice should be sent to all Store Managers and Assistant Managers during the relevant period. Given the number of stores involved in this case, Plaintiffs believe that there more than 300 current and former employees in this class, each of whom has been unlawfully forced to work long hours without compensation. Each of these employees would benefit from the issuance of a Court-supervised Notice of the present lawsuit and the opportunity to join this action. Those similarly-situated employees are known to Defendants, are readily identifiable, and can

15

be located through Defendants' records.

## VI. CLASS ALLEGATIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 23

54.     Plaintiffs Pendergrass and Kelley bring this action on their own behalf and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class of individuals:

> All Store Managers and Assistant Managers employed by City Gear, Shelmar, and/or their retail stores from December 11, 2009 through December 11, 2012 – who worked at stores including, but not limited to, City Gear, Marty's, CGP, and The Vault but not including Deveroes.

55.     Plaintiffs Pendergrass and Kelley are members of the class they seek to represent.

56.     The Rule 23 Class is sufficiently numerous that joinder of all members is impractical, satisfying Federal Rule of Civil Procedure 23(a)(1).  At all times relevant to this litigation, Defendants employed at least one class member at all of their locations. Upon information and belief, there are approximately 300 or more class members during the class period.

57.     All members of the Rule 23 Class share the same pivotal questions of law and fact, thereby satisfying Federal Rule of Civil Procedure 23(a)(2).  Namely, all members of the Rule 23 Class share the questions of whether Defendants, pursuant to a common policy (1) failed to inform employees of their actual wages in violation of Tenn. Code Ann. § 50-2-101(b); and (2) whether Defendants' actions constituted unjust enrichment.

58.     The claims of Plaintiffs Pendergrass and Kelley are typical of the claims of the Rule 23 Class, thus satisfying Federal Rule of Civil Procedure 23(a)(3). Defendants' failure to inform Plaintiffs Pendergrass and Kelley of their actual hourly

16

wages or to pay them those wages was not the result of any Plaintiff-specific circumstances. Rather, it arose from Defendants' common compensation and payroll policies, which Defendants applied to all Store Managers and Assistant Managers.

59. Plaintiffs Pendergrass and Kelley will fairly and adequately represent and protect the interests of the Rule 23 Class. Further, Plaintiffs have retained competent counsel experienced in representing classes of employees against their employers related to their employers' failure to pay them properly under the law, thus satisfying Federal Rule of Civil Procedure 23(a)(4).

60. By consistently paying their Store Managers and Assistant Managers at rates different from and lower than the rates communicated to those employees, Defendants have acted on grounds that apply generally to all members of the Rule 23 Class, such that final injunctive relief and corresponding declaratory relief is appropriate respecting the class as a whole. Accordingly, Plaintiffs Pendergrass and Kelley are entitled to pursue their claims as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(2).

61. By consistently paying their Store Managers and Assistant Managers at rates different from and lower than the rates communicated to those employees, Defendants have created a scenario where questions of law and fact common to Rule 23 Class Members predominate over any questions affecting only individual members. Thus, a class action is superior to other available methods for fair and efficient adjudication of this matter. Accordingly, Plaintiffs Kelley and Pendergrass are entitled to pursue their claims as a class action, pursuant to Federal Rule of Civil Procedure 23(b)(3).

# FIRST CLAIM FOR RELIEF (FLSA)
## FAILURE TO PAY REQUIRED OVERTIME
### (29 U.S.C. § 207)

62.     Plaintiffs allege and incorporate by reference the preceding paragraphs of this Complaint as if fully alleged herein.

63.     At all relevant times, City Gear/Shelmar has been and continues to be an "employer" engaged in interstate "commerce" within the meaning of the FLSA, 29 U.S.C. § 203.  At all relevant times, City Gear/Shelmar has employed and continues to employ Store Managers and Assistant Managers as "employee[s]" within the meaning of the FLSA.  At all relevant times, City Gear/ Shelmar has had gross operating revenues far in excess of $500,000.

64.     Because Defendants willfully violated the FLSA by requiring Plaintiffs and the class members to work excessive hours without compensation, a three-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

65.     City Gear/Shelmar has willfully engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by requiring Plaintiffs and similarly-situated Store Managers and Assistant Managers to work substantially more than 40 hours per week without overtime pay, thereby refusing and failing to pay them the proper hourly wage compensation under § 207 of the FLSA.

66.     City Gear/Shelmar has willfully engaged in a widespread pattern and practice of violating the provisions of the FLSA, as detailed herein, by classifying Plaintiffs and similarly-situated Store Managers and Assistant Managers as exempt salaried employees even though it did not pay them on a fixed salary basis.  Defendants' conduct was designed to evade the wage and hour laws by pretending to pay these

employees a regular, fixed salary but instead paying them hourly and not paying them at all for working more than 40 hours.

67.     Defendants have essentially invented their own labor policy in direct contravention of the FLSA.  Defendants have knowingly violated the law and/or acted in reckless disregard of its requirements. Even when employees complained, the Company thumbed its nose at the law and threatened them with the loss of their jobs.

68.     As a general matter, an employee is not paid on a fixed salaried basis if he or she is subject to deductions to his or her predetermined weekly compensation.  No exceptions to this rule are applicable here.   Plaintiffs and the class members were subject to *pro rata* deductions if their hours in any particular week dropped below 43 – such as absences for less than a full day or those occasioned by a lack of work.  *See* 29 C.F.R. § 541.602. Defendants' uniform, Company-wide practice of making such improper deductions conclusively demonstrates that they did not intend to pay the class members on a salary basis, thus defeating the salary-basis test and eliminating any otherwise potentially applicable overtime exemption.  *See* 29 C.F.R. § 541.603.

69.     As a result of Defendants' violations of the FLSA, Plaintiffs, as well as all others similarly situated, have suffered damages by being denied overtime wages in accordance with § 207 of the FLSA.

70.     Defendants did not make a good faith effort to comply with the FLSA with respect to their compensation of Plaintiffs and other similarly situated present and former Store Managers and Assistant Managers.

71.     As a result of Defendants' unlawful acts, Plaintiffs and all similarly situated current and former Store Managers and Assistant Managers have been deprived

Case 3:12-cv-01287   Document 113-3   Filed 10/14/13   Page 19 of 24 PageID #: 867

of overtime compensation in amounts to be determined at trial, and are accordingly entitled to recovery of such amounts, liquidated (double) damages, prejudgment interest, attorneys' fees, costs, and other compensation pursuant to 29 U.S.C. § 216(b) as well as any other legal and equitable relief the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### (Tenn. Code Ann. § § 50-2-101(b))

72.     Plaintiffs bring this claim on behalf of all members of the proposed Rule 23 Class.

73.     Tennessee Code § 50-2-101 establishes that it is unlawful for any employer to hire any employee to work in a "workshop or factory" without first informing the employee of the amount of wages to be paid for the labor.

74.     Defendants qualify as "workshops and factories," or owners or proprietors thereof, under the statute's broad definition of workshops and factories as "any kind of establishment where labor is employed or machinery is used; provided, that domestic and agricultural pursuits are excluded."

75.     The statute further notes that an agreed wage "shall constitute a basis for litigation in civil case."

76.     Defendants violated Tenn. Code Ann. § 50-2-101 by misrepresenting to all Store Managers and Assistant Managers that those employees were salaried and exempt from overtime compensation and then requiring those employees to work 45 or more hours per week without being paid for many of those hours.

77.     Under Defendants' common pay policies, Store Managers and Assistant Managers had their pay docked for working less than a fixed number of hours, but did not earn any additional compensation for working more than those hours.

20

78.     Accordingly, because Store Managers and Assistant Managers were not really salaried employees, Defendants' common compensation policy had the effect of not paying them ***any compensation*** for some of the hours they worked, in violation of Tennessee law.

### THIRD CLAIM FOR RELIEF
(Unjust Enrichment)

79.     Plaintiffs bring this claim on behalf of all members of the proposed Rule 23 Class.

80.     Plaintiffs repeat and re-allege the allegations contained in the preceding and succeeding paragraphs of this complaint and incorporate such paragraphs by reference.

81.     Under Tennessee law, a defendants are liable for unjust enrichment when a plaintiff confers a benefit upon the defendants; the defendants appreciate such benefit; and acceptance of such benefit under the circumstances renders it inequitable for the defendants to retain the benefit without paying for it.

82.     Because of the wrongful activities described above, including the failure to pay wages due and owing, Defendants have received the benefit of Plaintiffs' and the class members' unpaid labor and have therefore received money belonging to the Plaintiffs and the class.

83.     Defendants were clearly aware of and appreciated the benefit that Plaintiffs and similarly situated employees conferred on them.

84.     By withholding Plaintiffs' and the class members' lawful wages for hours worked, Defendants have unjustly benefited, and under principles of equity and good conscience, Defendants should not be permitted to keep this money.

85.     Defendants have reaped illegal profits and unjustly enriched themselves at the expense of Plaintiffs and class members.

86.     As a result, Defendants must account to the Plaintiffs and class members for such unjust enrichment and disgorge their unlawful profits as restitution to the class.

87.     By reason of the foregoing, Plaintiffs and the class have suffered money damages in an amount to be determined at the trial of this action.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly-situated persons, pray for the following relief:

A.     That the Court determine that this action may be maintained as a collective action under 29 U.S.C. § 216(b) and a class action pursuant to Federal Rule of Civil Procedure 23;

B.     That, at the earliest possible time, Plaintiffs be allowed to give notice of this collective action, or that the Court issue such notice, to all persons who were employed by City Gear/Shelmar and/or its retail stores as a Store Manager and/or Assistant Manager during the applicable class period.  Such persons shall be informed that this civil action has been filed, of the nature of the action, and of their right to join this lawsuit.

C.     That the Court find that City Gear/Shelmar has violated the overtime provisions of the FLSA, 29 U.S.C. § 207 as to Plaintiffs and the FLSA Class;

D.     That the Court find that City Gear/Shelmar's wage and hour violations as described have been willful;

E.     That the Court find that City Gear/Shelmar's compensation policies violate

Tenn. Code. Ann. § 50-2-101;

F.    That the Court award to Plaintiffs and the Plaintiff FLSA Class compensatory and liquidated damages in excess of $10 million for unpaid overtime compensation, statutory penalties, and interest subject to proof at trial pursuant to 29 U.S.C. § 201 *et seq*. and the supporting United States Department of Labor regulations;

G.    That the court award to Plaintiffs and members of the Rule 23 class compensatory damages, to be determined at trial, for Defendants' failure to pay the appropriate hourly wages for all hours worked, in violation of Tenn. Code Ann. § 50-2-101;

H.    That the court award to Plaintiffs and members of the Rule 23 class compensatory damages, to be determined at trial, as disgorgement for Defendants' unjust enrichment from Plaintiffs' and the class members' unpaid labor;

I.    That Plaintiffs and the Class be awarded reasonable attorneys' fees and costs pursuant to FLSA 29 U.S.C. § 216(b) and/or other applicable law; and

J.    That the Court award such other and further relief as this Court may deem appropriate.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury on all questions of fact raised by the complaint.


Dated: October 14, 2013                    Respectfully submitted,

                                            /s/David W. Garrison____
                                           George E. Barrett
                                           Douglas S.  Johnston, Jr.
                                           David W. Garrison

23

Scott P. Tift
**BARRETT JOHNSTON, LLC**
217 Second Ave North
Nashville, TN 37201
Telephone: (615)244-2202
Facsimile: (615)252-3798
gbarrett@barrettjohnston.com
djohnston@barrettjohnston.com
dgarrison@barrettjohnston.com
stift@barrettjohnston.com

*Co-Counsel for Plaintiffs and the*
*Proposed Collective Action Class*

David Sanford*
Grant Morris*
**SANFORD HEISLER, LLP**
1666 Connecticut Ave, NW, Suite 300
Washington, DC 200009
 Telephone:  **(202) 499-5201**
Facsimile: **(202) 499-5199**
dsanford@sanfordheisler.com
gmorris@sanfordheisler.com

Jeremy Heisler*
Andrew Melzer*
**SANFORD HEISLER, LLP**
1350 Ave of the Americas, 31st Floor
New York, NY 10019
Telephone:  (646) 402-5650
Facsimile: (646) 402-5651
jheisler@sanfordheisler.com
amelzer@sanfordheisler.com

*Admitted Pro Hac Vice*

*Lead Counsel for Plaintiffs and the*
*Proposed Collective Action Class*