UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| DENITHIA PENDERGRASS AND ALENA KELLEY, Individually and On Behalf of All Others Similarly Situated,<br><br>    *Plaintiffs*,<br>v.<br><br>CITY GEAR, LLC, a.k.a. SHELMAR RETAIL PARTNERS, LLC; SHELMAR RETAIL PARTNERS, INC.; SHELMAR, INC.; MARTY'S LLC; and MARTY'S INC.,<br><br>    *Defendants*. | ) <br> ) <br> ) <br> ) CASE NO. 3:12-cv-01287 <br> ) <br> ) CIVIL ACTION <br> ) <br> ) JURY TRIAL DEMANDED <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**JOINT DECLARATION OF DAVID SANFORD, ANDREW MELZER, AND DAVID GARRISON IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND RELATED RELIEF**

  David Sanford, Andrew Melzer, and David Garrison states as follows under the penalty of perjury, pursuant to 28 U.S.C. § 1746:

  1.  David Sanford is a founding Partner and Chairman of Sanford Heisler, LLP. Mr. Melzer is Senior Litigation Counsel in the New York office of Sanford Heisler, LLP. Mr. Garrison is a partner at Barrett Johnston, LLC in Nashville. Based on their active participation and supervision in all material aspects of the prosecution and settlement of this action, they have personal knowledge of the matters set forth in this certification, unless stated otherwise.

  2.  Messrs. Sanford, Melzer, and Garrison make this Declaration in support of the Plaintiffs' unopposed motion for settlement approval and unopposed application for attorney's fees and costs and service payments.

**I.  Lead Counsel's Background**

  3.  David Sanford graduated from Stanford Law School in 1995. He was a law clerk

1

for Judge Gladys Kessler of the United States District Court for the District of Columbia from 1995 through 1996. Mr. Sanford has been a member in good standing of the Maryland State Bar and the District of Columbia Bar since 1997 and is admitted to this Court on a *pro hac vice* basis in this case. Since 2001, Mr. Sanford has been lead or co-lead Class Counsel in more than 50 Title VII and wage and hour matters throughout the United States, has obtained approximately 36 class settlements, and is currently serving as Lead Counsel in numerous class, individual and qui tam matters. He is an "AV" rated attorney.

4. Mr. Melzer graduated from NYU School of Law in 2003. Mr. Melzer was a law clerk on the Massachusetts Appeals Court from 2003 to 2005. He has been a member in good standing of the New York State bar since 2004. In 2013, Mr. Melzer was selected for inclusion on *Super Lawyers* magazine's "Rising Stars" list. He has been admitted to this Court on a *pro hac vice* basis in this case.

5. The law firm of Sanford Heisler, LLP ("Class Counsel") has been and continues to be significantly involved in civil rights and employment class action litigation. The firm is "AV" rated. Sanford Heisler has served as counsel in numerous class actions around the United States, producing hundreds of millions of dollars in recoveries to class members. The Firm has been repeatedly recognized for its high-caliber representation of its clients and high standing at the bar. For example, at the final fairness hearing in *Velez v. Novartis Pharms. Corp.,* No. 04-cv-9193(CM) (S.D.N.Y. Nov. 19, 2010), the judge commented that the firm had achieved an "extraordinary" result: "This was a well prepared case. It was a brilliantly tried case by plaintiff's counsel. . . and it yielded a one-of-a-kind result, and that has led to a one-of-a-kind settlement." At the final fairness hearing in *Hernandez v. C&S Wholesale Grocers, Inc.*, No. 06 cv 2675 (CLB)(MDF) (S.D.N.Y. July 31, 2008), in approving a wage and hour settlement, the

judge described Sanford Heisler as "exceptionally able and experienced" and praised "the work that counsel have put in, not just in terms of the quantity, but what it was that counsel did, with obviously the tremendous amount of work . . ." and acknowledged a highly favorable result in "obviously a very complex dispute, both in terms of the law and in terms of the facts."

6. Mr. Garrison graduated from Valparaiso School of Law in 2005. He has been a member in good standing of the Tennessee State bar since 2006. He has been admitted to this Court since May 2006. Since 2006, Mr. Garrison has been lead or co-lead Class Counsel in more than a dozen wage and hour collective or class actions in federal district courts throughout the United States, including in the Middle District of Tennessee.

7. The law firm of Barrett Johnston, LLC ("Class Counsel") and its predecessor firm entities has handled complex class action matters on behalf of employees, shareholders, and consumers, as well as civil rights matters, for more than 50 years. The firm's reputation for excellence has been recognized on repeated occasions by various courts throughout the country which have appointed the firm to leadership positions in complex class and derivative actions including multi-district or consolidated litigations. *See, e.g., Horns ex rel. v. Raines,* 227 F.R.D. 1, 3-4 (D.D.C. 2005) (appointing firm co-lead counsel in Fannie Mae shareholder derivative litigation and noting the experience and success of the firm in this type of litigation); *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust, et al. v. Stumpf, et al.*, No. C 11-2369, slip op., at *3 (N.D. Cal. Aug. 3, 2011) (appointing the firm co-lead counsel in Wells Fargo shareholder derivative action involving robo-signing and other related mortgage abuses and holding that "Barrett Johnston . . . has considerable experience litigating complex class and shareholder actions, and the firm has been appointed co-lead counsel in such cases. The Court finds that [Barrett Johnston] will fairly and adequately represent Wells Fargo shareholders, and

do so in an economic and efficient fashion"). The firm has also been responsible for handling class action civil rights matters of national significant on behalf of plaintiffs, including an action that resulted in the dismantling of a dual system of higher education in the state of Tennessee based on race and resulted in benefits totaling in excess of $320 million. *Geier v. Sundquist*, 372 F.3d 784 (6th Cir. 2004).

## II. Introduction to the Settlement Preliminarily Approved on November 19, 2012 and the Relief Sought by this Motion

7. Plaintiffs seek final approval of a total wage and hour settlement of $1.9 million for a class of 290 current and former employees. This settlement comes only after extensive investigation and informal discovery and a two-day mediation presided over by an experienced mediator along with months of follow-up negotiations. It represents a substantial percentage of the Class's maximum recovery assuming that all issues including liability, method of calculating damages, willfulness, and liquidated damages are resolved in Plaintiffs' favor. In Counsel's estimation, the settlement is a high percentage of Defendants' probable exposure given the most likely damages verdict if Plaintiffs succeed on liability. Under the settlement, individual class members will receive awards that are closely tailored to their actual damages. Individual awards will be based on Company records showing the amount of time each class member worked during the relevant period and their applicable rates of pay.

8. In arriving at this highly favorable result, Plaintiffs and Class Counsel recognized the expense and length of a trial and potential appellate process, and further acknowledged that both certification of the class and success on the merits remain uncertain. Avoiding a protracted litigation process was particularly important in this case because City Gear has continually asserted that it faces a significant risk of bankruptcy and that this case could drive it out of business. If this case proceeded to verdict, it is possible that Plaintiffs and the Class would not

be able to recover any more than the funds made available through this settlement or even that a victory at trial would be a pyrrhic one. Due to City Gear's financial and liquidity problems, the parties have agreed to structure the settlement payments into two installments.

9. Pursuant to the terms of the Settlement, Plaintiffs now move for entry of the proposed Order Finally Approving the Settlement, which accomplishes the following:

(i) grants final approval of the preliminarily approved Settlement and authorizes that settlement payments be made to the class members;

(ii) Awards Attorney's fees and costs to Class Counsel in the combined amount of $653,326.97; and

(iii) Awards service payments to the two Named Plaintiffs; three additional original Plaintiffs who joined together with the Named Plaintiffs to bring this action; and five additional opt-in Plaintiffs provided Declarations and actively participated in this litigation on behalf of their fellow employees.

## III. Background and History of this Litigation

10. On December 11, 2012, following an investigation, Plaintiffs commenced this action against the Defendants. Five original Plaintiffs – Denithia Pendergrass, Alena Kelley, Raishea Banks, Tiffany Dailey, and Gabrielle Coleman – initiated and brought the case together. Plaintiffs alleged that they and the members of the Class were misclassified as exempt from the Fair Labor Standards Act ("FLSA") and not paid compensation for overtime hours they worked. Plaintiffs alleged that Defendants had a uniform policy and practice of taking prorated wage deductions whenever they or the Class Members failed to work a certain number of hours per week. This practice defeated the salary-basis component of any potentially applicable exemptions and made Plaintiffs and the Class non-exempt, overtime-eligible employees. The

5

Action alleged Plaintiffs were entitled to recovery of unpaid overtime and other relief, including liquidated damages and attorneys' fees and costs.

11.     On December 20, 2012, after receiving information about allegedly-improper contacts between City Gear and the class employees, Plaintiffs filed an Emergency Application for a Temporary Restraining Order (TRO) and Motion for a Preliminary Injunction. Plaintiffs Pendergrass and Banks filed sworn Declarations in support of the motion. On December 21, 2013, the Court granted Plaintiffs' Motion in part and denied in part, ordering that Defendants and various associated individuals "are hereby restrained and enjoined from communicating with any named Plaintiff, opt-in Plaintiff, or prospective class member in this litigation concerning this litigation, the issues presented therein, or their FLSA rights from the time of the entry of this Order until a hearing is held on Plaintiffs' application for a preliminary injunction or further Order of the Court" Doc. No. 37.

12.     On January 18, 2013, Plaintiffs moved for Conditional Collective Action Certification and Authorization of Collective Action Notice. Plaintiffs further moved for corrective notice and equitable tolling to address City Gear's allegedly-improper communications with the class. Plaintiffs Banks, Dailey, Kelley, and Pendergrass and Opt-in Plaintiffs Aheisha Harvey, Bency Moise, Gretel Pittman, Kandace Turner, and Toyella Westbrooks filed sworn Declarations in support of the motion.

13.     On January 30, 2013, the parties submitted a joint motion to stay Court proceedings pending an attempt to settle this matter at mediation. The Court granted the stay on January 31, along with an order that the statute of limitations for all potential class members' claims be tolled for the duration of the stay. Doc. No. 74.

14.     In advance of the mediation, City Gear provided Plaintiffs' counsel with time and

6

Case 3:12-cv-01287   Document 125   Filed 01/10/14   Page 6 of 19 PageID #: 1058

payroll data showing the hours and rates of pay of each of the members of the proposed class. Plaintiffs' expert labor economist used this data to calculate the Class's damages. Further, in connection with the mediation and settlement, both parties provided other evidence, declarations, and representations to enable the parties to evaluate and streamline the case.

15. On May 1-2, 2013, the parties conducted an arm's length mediation before an experienced mediator, Lew Conner of Waller Lansden Dortch & Davis, LLP in Nashville, Tennessee. Named Plaintiffs Kelley and Pendergrass attended the mediation; Ms. Kelley traveled from Texas with her mother in order to attend. The other three original Plaintiffs authorized Ms. Kelley and Ms. Pendergrass to negotiate on their behalf and generally stayed abreast of negotiations.

16. In advance of the mediation, the parties submitted and exchanged detailed written mediation statements with extensive exhibits, including competing expert analyses of the Class's damages. With mediator Conner's assistance, the parties negotiated in good faith over two full days and reached an agreement on the principal terms of a settlement – subject to the preparation and execution of a comprehensive written settlement agreement and approval of that agreement by the Court. An important driving force behind these discussions was City Gear's financial position and its commitments to its lenders.

17. Since the mediation, the parties have engaged in further arm's-length negotiations regarding the terms and language of the Settlement Agreement and issues that have arisen regarding administration of the settlement.

18. In connection with the Complaint, TRO, conditional certification motion, and mediation and settlement process, Plaintiffs' Counsel both conducted an in-depth investigation and analysis of Plaintiffs' claims as well as the suitability of these claims for class and collective

action treatment. Plaintiffs' Counsel interviewed dozens of Named and opt-in Plaintiffs and class members, as well as other employees; obtained 11 signed, sworn declarations from nine Named and opt-in Plaintiffs (two Plaintiffs submitted declarations for both the TRO and conditional certification motion) and one declaration from a City Gear District Manager; gathered documents in support of the claims; and received information pertaining to the Class as a whole. The parties exchanged substantial quantities of information and documents – including declarations, employment and payroll data, legal analyses, and expert damages calculations. Despite the lack of formal discovery, Plaintiffs' Counsel believes that it has a very well-formed view of the strengths and weaknesses of this case.

19. The settlement evidenced by this Agreement is the product of intense, hard-fought, arm's length negotiations. Based on its independent investigation and evaluation and the informal pretrial discovery conducted by the parties, Class Counsel has recommended and the Named Plaintiffs and Class Representatives have concluded that the terms and conditions of the Agreement are fair, reasonable, and adequate to the Class. Further, we believe that the Agreement is within the best interests of the class members in light of all the known facts and circumstances including Defendants' financial situation and the risk of significant delay.

*Preliminary Approval*

20. On October 14, 2013, Plaintiffs submitted their Unopposed Motion for Preliminary Approval of Settlement. (Docs 111-113). On October 15, 2013, the Court (i) preliminarily approved the proposed collective and class action settlement in this action, (ii) certified the Fed. R. Civ. P. 23(b)(3) and 29 U.S.C. § 216(b) classes for settlement purposes, (iii) appointed class counsel and class representatives, (iv) authorized notice to the class members, and (v) set a date for the final fairness hearing. (Doc. 114).

**IV. Terms of the Settlement Agreement**

21. City Gear will pay a total of $1,900,000 to settle this lawsuit. Plaintiffs and the class members will receive *pro rata* shares of the settlement based on their actual damages to be determined based on City Gear's time and payroll data. Named and Opt-in Plaintiffs under the FLSA will receive awards in a 2:1 ratio as compared to Rule 23-only class members. This ratio accounts for the fact that Rule 23-only class members will not be waiving or releasing their FLSA claims as well as the availability of liquidated damages under the FLSA, the risk Opt-in Plaintiffs have taken by affirmatively joining the action, and the relative strength of those claims.

22. In Class Counsel's opinion, the $1,900,000 fund represents an excellent outcome for Plaintiffs and the class. Based on City Gear's data from January 1, 2010 to December 31, 2012 – roughly corresponding to the class period (December 11, 2009 to December 11, 2012) – Plaintiffs' expert calculated the Class's damages for the period as $4.8 million.[1] This estimate assumes class-wide liability across the entire class period and includes (a) the calculation of damages based on a default time-and-a-half overtime for all hours over 40; (b) a three-year statute of limitations based upon a finding of "willfulness" (*see* 29 U.S.C. § 255(a)); and (c) doubling for liquidated damages under 29 U.S.C. § 260. Even assuming liability, each of these assumptions is highly disputed by the parties and would present substantial risk going forward. For example, holding presumptions (b) and (c) constant, application of the rule set forth in 29 CFR § 778.325 might likely result in class-wide damages of approximately $2.25 million (assuming that the class members' salaries represented straight-time pay for City Gear's default 45-hour week); under City Gear's calculations, application of the fluctuating workweek (FWW)

---

[1] City Gear has represented that it discontinued the policies and practices alleged in this litigation upon the filing of the Complaint. Therefore, the class period ended as of December 11, 2012 and damages did not continue to accrue.

9

method of computing overtime would bring the total damages to about $ 1.377 million.[2]

23. The parties' damages calculations encompass the Class's misclassification and regular rate allegations. That is: the various incentive compensation paid to the class was used in determining the amounts of overtime pay allegedly owed to each class employee. Inclusion of these incentives increased the damages by increasing their "regular rates" of pay.

24. Defendants' calculation using the FWW method with willfulness and liquidated damages (City Gear's high-end damages calculation) most closely approximates the amount remaining in the settlement fund after an award of attorney's fees and other expenses ($1,246,673.03). Although individual awards will need to be recalculated upon final approval, under Defendants' high-end calculation, 46 class members have damages of over $10,000, 59 class members have damages between $5,000 and $10,000, and 118 class members have damages between $1,000 and $5,000. These figures appear to be reasonable preliminary estimates of their awards under the settlement. The remaining class members seem to have worked in class positions for short periods of time, even as little as a single workweek.

25. Should this litigation go forward, the application of the FWW method versus other methods of calculating damages as well as the propriety of a willfulness finding and liquidated damages will be vigorously contested. Further, as represented by City Gear's principals and Counsel, the Company will run a risk of bankruptcy which could not only affect its ability to pay a verdict but also jeopardize Plaintiffs' and the class members' jobs.

26. Out of the settlement funds, Plaintiffs may apply for service payments to named Plaintiffs and other opt-in Plaintiffs who assisted in the litigation – ten individuals in total – in amounts from $3,000 to $20,000, totaling $70,000. All of these individuals extended themselves

---

[2] Under Defendants' calculations using the FWW, (i) without willfulness and liquidated damages, the damages would be $474,207.64; (ii) with liquidated damages but not willfulness, the total would be $948,659.22.

personally in this litigation and substantially contributed to the success of the case. The aggregate service payments represent less than four percent of the total monetary relief to the class. Each of the proposed payments is smaller than the highest anticipated individual award under the settlement, which could potentially exceed $25,000.

27.     For settlement purposes, Defendants have agreed to certification of the class in this case under Federal Rule of Civil Procedure 23(b)(3) and certification of a collective action under section 216(b) of the Fair Labor Standards Act. The Court certified these settlement classes in its preliminary approval order.

## V.     The Class Members' Unanimous Endorsement of the Settlement

28.     In preliminarily approving the settlement, the Court authorized a § 216(b) and Rule 23(e) notice to the class that fully described the settlement terms, including the monetary benefits, individual settlement awards, service payments, and attorney's fees and costs. A true copy of the final Notice sent to the Class Members is attached as Exhibit A.

29.     The reaction of the class to the settlement is an important barometer of the fairness and reasonableness of the settlement terms.

30.     The response of the class is overwhelming in support of the settlement terms. Out of the class of 290 current and former Store Managers and Assistant Managers, 183 (or approximately 63%) have opted into the FLSA portion of the case.[3] There are no opt-outs or

---

[3] This includes an Election Form for a deceased class member, Kimberly Jamerson, submitted by her mother Willie Brooks-Howze on behalf of her estate. As appropriate, Plaintiffs and/or Ms. Brooks-Howze will follow up on this issue and the matter of settlement payments to Ms. Jamerson's heirs.

Further, one class member submitted an Election Form to Class Counsel but then contacted Class Counsel both orally and in writing to state that he did not want the Form to be filed and wished to remain a Rule-23 only class member. His Form has not been filed with the Court.

Finally, one non-class member, Shaundra Kennebrew Dixon, opted into this action in October 2013. Ms. Dixon worked for City Gear for approximately two weeks during the class period. However, Company records show that

11

Case 3:12-cv-01287   Document 125   Filed 01/10/14   Page 11 of 19 PageID #: 1063

objections. Accordingly, 100% of the class members with actual damages will be receiving a settlement benefit in this action and it is anticipated that there will be no reversion to the Company. Plaintiffs' Counsel believe that this level of participation in this class settlement is an outstanding result.

**VII.     The Settlement is Fair and Reasonable and Should Be Approved**

31.     Accompanying this Joint Declaration is a Memorandum of Law in Support of Plaintiffs' unopposed motion that demonstrates why, under governing law, this Court should finally approve the preliminarily approved Settlement and grant the relief requested in the instant motion.

32.     Based on company data regarding the class and the total settlement fund, we are able to estimate the average settlement award at roughly $4,000 and the maximum award at potentially upwards of $20,000.

33.     With the various factual and legal disputes in the case, Plaintiffs believe that the settlement represents up to well over 200% of the range of possible damages verdicts should they prevail on class liability. For example, Defendants calculated the class' damages at $474,207.64 assuming a two-year statute of limitations, the use of the Fluctuating Workweek method of determining damages, and no liquidated damages. Using City Gear's time and payroll data, the high-end estimate of damages is approximately $4.8 million. Thus, even if Plaintiffs fully prevail on liability, the settlement amount represents from approximately 40% to 400% of the likely class damages outcomes if Plaintiffs were able to maintain certification through a trial and verdict. "There can be no doubt that the results achieved for the Class Members are exceptional… [this] allocation [] is well above the 7 % to 11 % average result achieved for class members." *Rotuna v. West Customer Mgmt. Group, LLC*, 2010 U.S. Dist. LEXIS 58912, at *21

---

she was not a Store Manager or Assistant Manager but a Manager in Training paid on an hourly basis. Class Counsel has informed Ms. Dixon that she is not a class member and not entitled to participate in this case.

12

(N.D. Ohio June 15, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 U.S. Dist. LEXIS 20446, at *19-20 (N.D. Ohio Mar. 8, 2010).

35. As discussed above, the remarkable participation rate and complete lack of objections demonstrate the class' resounding endorsement of the settlement.

36. These are only some of the factors supporting the fairness, reasonableness, and adequacy of the settlement, as more fully discussed in the accompanying Memorandum of Law.

## VIII. THE SERVICE PAYMENT REQUESTS ARE REASONABLE

37. In connection with the Settlement, Plaintiffs seek unopposed service payments of $20,000 to Named Plaintiff Alena Kelley; $10,000 to Named Plaintiff Denithia Pendergrass and original Plaintiffs Raishena Banks and Tiffany Dailey; $5,000 to original Plaintiff Gabrielle Coleman; and $3,000 to each of five additional Opt-in Plaintiffs – Aheisha Harvey, Bency Moise, Gretel Pittman, Kandace Turner, and Toyella Westbrooks – who gave Declarations and took an active role in the litigation.

38. The amounts sought are modest: a total of $70,000 – approximately 3.7 percent of the Settlement Fund.

39. Such service payments are strongly supported by public policy and typically have been endorsed by courts as compensation for individual's services to the Class. (*See* Memorandum of Law, pgs. 31-37). Without the efforts and sacrifices of the Named Plaintiffs, original Plaintiffs and other Declarants, this case may never have been brought or have achieved the successful result accomplished by the settlement.

40. The Named Plaintiffs, other original Plaintiffs, and Opt-in Plaintiff Declarants have all: (1) risked economic harm, and (2) contributed significantly to prosecuting this action. This is particularly true given the relatively high-profile nature of this lawsuit. Each of these

13

Plaintiffs lent their names to the prosecution of this suit and was instrumental in achieving this settlement. Class Counsel notes that fear of retaliation ran especially high after the Company's communications with class members at the beginning of the case in December 2012 – which Plaintiffs challenged with a TRO application and motion for equitable tolling and corrective notice. Yet these Plaintiffs never wavered, lent their names to sworn Declarations in support of the action, and saw the case through to a successful settlement.

41. Additionally, Ms. Kelley travelled with her mother from Texas to represent the class at a two-day mediation. Ms. Kelley further gave up lucrative individual off-the-clock claims to facilitate a class settlement on behalf of her fellow employees. Both parties recognize that she was in the unique position of simultaneously working more than one job and having the majority of her hours unrecorded by the Company's time system. Therefore, her individual settlement benefit in this action would be an inadequate incentive for her to bring the case. In Class Counsel's understanding, settlement allocations, including service payments, frequently account for such individual circumstances.

42. Ms. Pendergrass also attended the mediation on behalf of the class and participated in negotiations.

43. The other original Plaintiffs, Ms. Banks, Ms. Coleman, and Ms. Dailey, banded together with Ms. Kelley and Ms. Pendergrass to bring the case. Each of them volunteered and agreed to be a Named Plaintiff and took on a key role in cooperating with Class Counsel, driving the litigation, and providing necessary information.

44. Ms. Harvey, Ms. Moise, Ms. Pittman, Ms. Turner, and Ms. Westbrooks stepped forward as key participants – joining this action and providing information, documents, and Declarations when many of their colleagues would not.

45.     Defendants have agreed to the requested service payments.  Further, the court-approved Notice informed members of the Class about that the Court could award "reasonable service payments of up to $20,000 to the Named Plaintiffs and other Plaintiffs who helped to litigate the case."  Armed with that knowledge, no class members have filed any objections to the proposed service awards.

46.     Incentive payments in the amounts are typically considered reasonable and modest compensation for the services performed by such Plaintiffs and the risks they have undertaken.  Courts often award significantly higher amounts.  Attached as Exhibit B is a true copy of the final approval order in *McReynolds v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No 1:05-cv6583 (N.D. Ill. Dec. 6, 2013) (awarding $250,000 as incentive payment to each Named Plaintiff). Attached as Exhibit C is a true copy of the Final Settlement Approval Order for *In re Novartis Wage & Hour Litig.*, No. 06-MD-1794-PAC  (S.D.N.Y. May 31, 2012) (Doc. 214), which approved incentive payments in the amounts of $20,000 to $40,000 to Named Plaintiffs and $3,500 to each of 21 deponents.

## IX.     PLAINTIFFS' ATTORNEYS FEES AND EXPENSES ARE REASONABLE

47.     Class Counsel prosecuted this case on a contingent fee basis, without any assurance whatsoever that they would ever be paid or compensated for the expenses they had to advance to secure the victory.

48.     The Settlement Agreement and class Notice provides for up to one-third of the settlement fund in attorney's fees plus an additional amount in litigation expenses.  Class Counsel now seeks $29,990.45 in litigation expenses, or approximately 1.6% of the total settlement, and $623,336.52 in attorney's fees, or one-third of the total net settlement remaining after the deduction of these expenses.  The requested fee is consistent with or below percentage

15

awards given in this Circuit and elsewhere in complex collective and class action settlements, including in comparable wage and hour cases.

49. The class settlement Notice included a provision for attorney's fees in an amount of up to one-third of the settlement, plus litigation expenses. Although 290 class members were sent the notice of the settlement, not a single class member has objected to any term of the settlement – including the fee provision.

50. Over approximately a year-and-a-half of investigation, litigation, negotiation, and settlement procedures, Plaintiffs developed an extensive record; drafted and filed voluminous briefing; and engaged in lengthy settlement negotiations and settlement drafting. In furtherance of these efforts, Class Counsel has dedicated more than 1500 hours to prosecuting this litigation from its inception to date. Class Counsel's and Co-Counsel's time entries are attached hereto as Exhibits D and E. Overall, the prosecution of this action required a high level of experience and expertise in complex class and collective action litigation, as well as the ability to provide the highest caliber of legal services under challenging circumstances.

51. In addition, the fee for Class Counsel agreed upon in the Settlement Agreement will also serve as the sole compensation for the extensive services Class Counsel will perform for Class Members in the future. These include overseeing and administering all aspects of the Settlement Agreement, ongoing communications with class members and Defendants. Class Counsel expects to devote substantial additional hours overseeing the Settlement in the future. In Class Counsel's experience, this could amount to tens of thousands of dollars in legal services.

52. Plaintiffs' attorneys have thus far incurred $24,990.45 in costs and expenses. Class Counsel and Co-Counsel's expense reports are attached hereto as Exhibits E and F. Plaintiffs' damages expert Alex Vekker of Vekker Consulting, LLC in Philadelphia estimates

16

that it will cost an additional $5,000 to calculate the class members' settlement shares. This amount includes approximately $1,000 in expert costs accrued but not yet billed to Counsel.

53. Counsel anticipates spending significant additional dollars going forward in administering and enforcing the terms of the settlement agreement and in maintaining and fulfilling their duties to the Class Members.

54. Class Counsel's current "lodestar" – time expended, multiplied by hourly rates – is approximately $721,373. Plaintiffs therefore request a "negative" multiplier of approximately .86, meaning that their lodestar is greater than the requested fee. As noted herein, Class Counsel anticipates spending additional time after this Court approves this Settlement.

55. Hourly rates for the attorneys who were instrumental in the litigation are as follows:

- ■ Sanford Heisler Partners: $950.00 for David Sanford and $900 for Jeremy Heisler.

- ■ Senior Litigation Counsel and Of-Counsel: $800 for Grant Morris and $550 for Andrew Melzer.

- ■ Co-Counsel Barrett Johnston: $600 for George Barrett, $400 for David Garrison, $300 for Scott Tift, and $250 for Seth Hyatt.

56. These individual rates are based on the attorney's law school graduation year, title and position, and legal experience as well as the prevailing market rates in the jurisdiction in which the attorney practices. Counsel's research indicates that the rates of Sanford Heisler attorneys are at or below the market rates for comparable practitioners in the same jurisdictions.

57. Rates for staff are $195 for junior legal assistants and $205 for senior legal assistants at Sanford Heisler and $125 for paralegals at Barrett Johnston.

WHEREFORE, Plaintiffs request that the Court: (i) enter the Order Finally Approving Class Settlement, (ii) award service payments in the requested amounts, and (iii) approve counsel's application for attorney's fees and costs.

We declare under penalty of perjury that the foregoing is true and correct to the best of or knowledge and understanding.

Executed:   San Francisco, California, New York, New York, Nashville, TN

January 10, 2014

          /s/
       David W. Sanford (*pro hac vice*)
       **Sanford Heisler, LLP**
       1350 Avenue of the Americas, 31st Floor
       New York, New York 10019
       (646) 402-5650

          /s/
       Andrew Melzer (*pro hac vice*)
       **Sanford Heisler, LLP**
       1350 Avenue of the Americas, 31st Floor
       New York, New York 10019
       (646) 402-5650

          /s/
       David Garrison
       **BARRETT JOHNSTON, LLC**
       217 Second Ave North
       Nashville, TN 37201
       Telephone: (615)244-2202
       Facsimile: (615)252-3798

# CERTIFICATE OF SERVICE

        I hereby certify that a true and exact copy of the foregoing *Declaration in Support of Plaintiffs' Unopposed Motion for Final Approval of Settlement and Related Relief* has been served on the following counsel of record via the court's ECF filing system, on this the 10th day of January 2014:

Randall Fishman (#7097)
C. Barry Ward (#8447)
Richard S. Townley (#28164)
BALLIN, BALLIN & FISHMAN, P.C.
200 Jefferson Avenue, Suite 1250
Memphis, TN 38103-2357

Kenneth Ray Jones, Jr. (BPR #7278)
William B. Hawkins, III (BPR #20117)
JONES HAWKINS & FARMER, PLC
150 Fourth Avenue North, Suite 1820
Nashville, TN 37219

*Attorneys for Defendants*

                                                /s/ Jeremy Heisler
                                                Jeremy Heisler
                                                SANFORD HEISLER, LLP